FEDERATED DEPARTMENT STORES, INC., RIKE-KUMLER DIVISION, APPELLEE AND CROSS-APPELLANT, *v.* LINDLEY, TAX COMMR., APPELLANT AND CROSS-APPELLEE.

[Cite as Federated Dept. Stores, Inc. *v.* Lindley (1983), 5 Ohio St. 3d 213.]

(No. 82-1549—Decided June 29, 1983.)

---

[1] This agreement provided in pertinent part as follows:

"Kindly take this letter to be an agreement between Rike's * * * and the Ohio Department of Taxation in regard to the perameter [*sic*] to be used for a sales tax audit.

"We agree to utilize a test check of five days of sales at the downtown store location in order to determine the deficiencies, if any, in * * * [Rike's] sales tax liability for the audit period 1/1/73-12/31/75. * * * The errors found in the test check will be used as a basis to calculate a percentage of error factor."

*Mr. Stanley J. Bowers, Ms. Judith Nicely, Smith & Schnacke Co., L.P.A.,* and *Ms. Maryann B. Gall,* for appellee and cross-appellant.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. Mark A. Engel,* for appellant and cross-appellee.

*Per Curiam.* The primary focus throughout this appeal has been on whether the tax assessment predicated on "Account 215" was valid. For the

---

[2] Mr. Frank R. DeLuca, tax administrator for Federated Department Stores, testified as to the contents of Account 215:

"In Account 215 I have listed the three items that are contained in there. One is the total amount. It is called 'Collected tax' and collected tax simply is that amount that is keyed into the registers as tax. Anything rung on the register keys as tax and anything detaxed or separated out of those registers' sales where tax is not shown separately.

"The third item shown in that account are [sic] termed sales and fees rung as tax and basically, these are those amounts that are recorded on the register. Again, [these are amounts recorded] as collected tax, but are actually merchandise sales or not [non-]taxable delivery fees that are improperly recorded as sales tax on the register instead of in [on] the appropriate merchandise key.

"The last item shown in that account is termed tax detaxed out of exempt sales and that amount is, in fact, tax that is called collected tax from registers without a sales tax key, but is in actuality backed out or computed out of exempt sales for which no tax is actually due.

"In the account you have anything that is rung on the register key that is termed sales tax or anything detaxed out of these registers without a separate tax key, and again, it is comprised primarily of anything rung on the register key designated as tax, sales that are rung on the register key designated as tax and tax that is detaxed out of the exempt sales."

following reasons, this court holds that the board's decision, that the assessment based on this account was invalid, was neither unlawful nor unreasonable.

Rike's has argued that Account 215 was only an estimate of sales tax liability and thus could not be used as the basis of an assessment. Contrastingly, the commissioner has argued that R.C. 5739.13 authorizes an assessment upon "any information" that a vendor is not remitting to the state all of the sales tax that it has collected, that Account 215 falls within the scope of "any information," and hence this account is relevant in determining sales tax liability.

The commissioner clearly had the authority to make an assessment based on Account 215, for R.C. 5739.13 provides, in pertinent part, as follows:

"If any vendor collects the tax imposed by * * * [R.C.] 5739.02 * * * and fails to remit the same to the state as prescribed * * * he shall be personally liable for any amount collected * * *. *The tax commissioner may make an assessment against such vendor based upon any information in his possession.*" (Emphasis added.)

The right to levy an assessment based on "any information," however, does not make the assessment conclusively correct. This court has previously held that when an assessment is contested, the taxpayer has the burden "* * * to show in what manner and to what extent * * *" the commissioner's investigation and audit, and the findings and assessments based thereon, were faulty and incorrect. *Midwest Transfer Co.* v. *Porterfield* (1968), 13 Ohio St. 2d 138, 141 [42 O.O.2d 365]. Accord *Belgrade Gardens* v. *Kosydar* (1974), 38 Ohio St. 2d 135, 143 [67 O.O.2d 147]; *Ohio Fast Freight* v. *Porterfield* (1972), 29 Ohio St. 2d 69, 71 [58 O.O.2d 116].

In this case, the board found that the taxpayer, *i.e.,* Rike's, had met this burden. The board stated as follows:

"The record contains ample testimony that explains this account [215], why it is maintained and its use. The evidence shows that account 215 is a management tool that reflects an estimate of tax liability. Mathematical accuracy is not deemed necessary * * *. The account is not used in the preparation of tax returns. The returns are prepared from audited sales records." The board consequently concluded that the commissioner "* * * was in error in making an assessment solely on the basis of the estimated figures that compose account 215."

This court has examined the record and finds that it contains sufficient probative evidence supporting the board's decision regarding the accuracy of the account upon which the subject assessment was based. On numerous occasions, this court had held that it will not "overrule board findings of fact which are based upon sufficient probative evidence." *Hawthorn Mellody* v. *Lindley* (1981), 65 Ohio St. 2d 47, 49 [19 O.O.3d 234]. See, also, *3535 Salem Corp.* v. *Lindley* (1979), 58 Ohio St. 2d 210 [12 O.O.3d 203]; *Episcopal Parish* v. *Kinney* (1979), 58 Ohio St. 2d 199 [12 O.O.3d 197].

In addition, it is well-settled that the scope of this court's review of a

decision appealed from the Board of Tax Appeals is whether the decision is unreasonable or unlawful. *Citizens Financial Corp.* v. *Porterfield* (1973), 25 Ohio St. 2d 53 [54 O.O.2d 191]. Based on the instant record, this court cannot find that the board's decision that the assessment based on Account 215 was invalid was unreasonable or unlawful.

It is indeed noteworthy that during this audit, the commissioner had alternative avenues by which to issue an accurate assessment, assuming, *arguendo,* that Rike's failed to comply with its statutory duty[3] to remit all sales taxes collected. R.C. 5739.13 provides that the commissioner may conduct a test check in order to determine the ratio which the tax required to be collected bore to the receipts from the vendor's taxable retail sales. By the commissioner's own admission, such a test check was never performed.

Furthermore, Rike's specifically agreed to allow the commissioner to conduct such a test check when the parties executed the letter of agreement.[4] Nonetheless, the commissioner disregarded these available means by which an accurate determination of any sales tax liability could be made and proceeded to issue an assessment based upon a managerial account merely reflecting estimated tax liability.[5]

For the foregoing reasons, the decision of the Board of Tax Appeals is affirmed.

*Decision affirmed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER, HOLMES, C. BROWN and J. P. CELEBREZZE, JJ., concur.

---

[3] R.C. 5739.13.

[4] See footnote 1.

[5] Throughout this appeal, the commissioner has intimated that Rike's records were insufficient. R.C. 5739.11 clearly-mandates that vendors are obligated to maintain complete and accurate records of sales upon which a tax may be due under R.C. 5739.01 through 5739.31. Assuming, *arguendo,* that Rike's failed to maintain complete and accurate records, R.C. 5739.10 authorizes the commissioner to conduct test checks designed to establish the proportion that taxable retail sales bear to all retail sales for a representative period which "approximate, as nearly as possible, the conditions under which the business was operated by the taxpayer during the audit period." See *Cherry Street Corp.* v. *Porterfield* (1971), 27 Ohio St. 2d 260, 263 [56 O.O.2d 156]. In this case, such a test check was never performed.