[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 337.]

MAXXIM MEDICAL, INC., APPELLANT, *v*. TRACY, TAX COMMR., APPELLEE.

[Cite as *Maxxim Med., Inc. v. Tracy*, 1999-Ohio-136.]

*Taxation—Decision of Board of Tax Appeals finding transcutaneous electrical nerve stimulators and neuromuscular electrical stimulators subject to sales tax affirmed.*

(No. 98-2252—Submitted June 23, 1999—Decided December 29, 1999.)

APPEAL from the Board of Tax Appeals, No. 94-X-224.

_____

{¶ 1} Maxxim Medical, Inc. ("Maxxim") sells and leases transcutaneous electrical nerve stimulators ("TENS") and neuromuscular electrical stimulators ("NMES") and associated equipment. After a sales and purchase audit, and a test check of sales, the Tax Commissioner issued a sales tax assessment against Maxxim for the audit period December 1, 1987 through December 31, 1990.

{¶ 2} The TENS unit is a battery-powered stimulation device that sends electrical impulses through wires to electrodes attached to the user's skin by an adhesive patch. The electrical impulses generated by the TENS unit act either to block pain or to contract or relax a patient's muscles. The electrodes from a TENS unit can be placed wherever there are nerves and muscles; for instance, they can be placed on the back, shoulders, neck, wrists, fingers, or arms.

{¶ 3} The NMES unit is another battery-powered stimulator similar to the TENS unit, except it is used to cause involuntary contractions or flexing of larger muscle groups on both the upper and lower extremities. A possible use for a NMES unit would be to control foot drop. When used for this purpose, the electrodes attached to the skin stimulate, in a coordinated manner, the various muscle groups that control the foot while walking, so that the heel will land first. The NMES unit can also be used to stimulate muscles on the arms, shoulders, and back.

**{¶ 4}** When this case was previously before this court in *Maxxim Med., Inc. v. Tracy* (1996), 76 Ohio St.3d 1201, 666 N.E.2d 1140 ("*Maxxim I*"), we granted Maxxim's motion for remand to the Board of Tax Appeals ("BTA"), based upon our decision in *Kempf Surgical Appliances, Inc. v. Tracy* (1996), 74 Ohio St.3d 517, 660 N.E.2d 444. *Kempf* determined that TENS and NMES units were not braces or other devices that supported weakened or nonfunctioning parts of the human body. We had remanded *Kempf* to the Board of Tax Appeals ("BTA") for a determination of whether the TENS and NMES devices aided perambulation within the meaning of R.C. 5739.02(B)(19).

**{¶ 5}** On remand, the BTA in *Maxxim* found that the TENS and NMES units could be used to aid human perambulation. However, the BTA also found that the units could be used to strengthen "dysfunctional parts of the body, akin to physical fitness equipment, which is expressly excluded from the exemption." Because of the possible multiple uses of the units, the BTA held that Maxxim must present evidence of the actual use of the device by the end user. The evidence presented by Maxxim failed to prove that the units whose sale was in question were being used by the buyer in an exempt manner.

**{¶ 6}** This court in *Maxxim I* also reserved judgment on whether Maxxim must collect sales tax from persons receiving TENS or NMES units paid for by the Ohio Bureau of Workers' Compensation ("BWC"). In its initial decision, *Maxxim Med., Inc. v. Tracy* (Nov. 3, 1995), BTA No. 94-X-224, unreported, the BTA held that former R.C. 4121.44(P) did not prevent Maxxim from collecting the tax from the patient receiving the TENS or NMES units. The BTA on remand found no basis for reconsidering its earlier determination.

**{¶ 7}** This cause is now before this court upon an appeal as of right.

_____

*Buckingham, Doolittle & Burroughs, L.L.P.*, *Steven A. Dimengo* and *William G. Nolan*, for appellant.

2

*Betty D. Montgomery*, Attorney General, and *Robert C. Maier*, Assistant Attorney General, for appellee.

_____

*Per Curiam.*

{¶ 8} Maxxim contends that R.C. 5739.03(B) relieves it from establishing each customer's use and therefore all its sales of TENS and NMES units were exempt. We disagree.

{¶ 9} R.C. 5739.02 provides that an "excise tax is hereby levied on each retail sale made in this state," and for the proper administration of R.C. Chapter 5739 "to prevent the evasion of the tax, it is presumed that all sales made in this state are subject to the tax until the contrary is established." Thus, until proven exempt or excepted from taxation, all retail sales are taxable.

{¶ 10} R.C. 5739.03(B) provides two opportunities for a vendor to relieve itself of the obligation to collect the tax. If a sale is claimed to be exempt, the consumer must furnish the vendor a certificate specifying the reason the sale is not legally subject to tax. The certificate must be furnished within the period for filing the return in which the sale is consummated. R.C. 5739.03(B) further provides that if no exemption certificate is obtained within the period for filing the return, it shall be presumed that the tax applies. Here, no exemption certificates were provided to Maxxim by its customers for the sales being contested.

{¶ 11} R.C. 5739.03(B) provides a second chance for a vendor to establish that a sale is not subject to the tax by providing that, after a vendor has received a notice of intention to levy an assessment, it may obtain letters of usage from its customers. By means of timely and proper letters of usage the vendor may establish that the sale is not subject to the tax. No disallowed letters of usage are being questioned in this appeal.

{¶ 12} Finally, R.C. 5739.03(B) provides that certificates need not be obtained, or furnished, when the identity of the consumer is such that the transaction

is never subject to the tax imposed or the item of personal property sold is never subject to the tax regardless of use. Maxxim relies upon this latter portion of R.C. 5739.03(B) to claim that its sales are not subject to tax.

{¶ 13} In *Federated Dept. Stores, Inc. v. Lindley* (1983), 5 Ohio St.3d 213, 215, 5 OBR 455, 457, 450 N.E.2d 687, 688, we stated that "when an assessment is contested, the taxpayer has the burden ' * * * to show in what manner and to what extent * * * ' the commissioner's investigation and audit, and the findings and assessments based thereon, were faulty and incorrect." The Tax Commissioner's findings are presumptively valid, absent a demonstration that those findings are clearly unreasonable or unlawful. *Hatchadorian v. Lindley* (1986), 21 Ohio St.3d 66, 21 OBR 365, 488 N.E.2d 145, paragraph one of the syllabus. Thus, the burden was on Maxxim to prove that its sales of the TENS and NMES units were exempt regardless of use.

{¶ 14} R.C. 5739.02 does except from taxation the sale of certain personal property no matter what its use, for instance, the sales of food for human consumption off the premises where sold. Additional examples of sales that are exempt regardless of the use are contained in R.C. 5739.02(B)(1) to (11). However, the sale of TENS and NMES units is not among those sales listed as being exempt regardless of the use. Maxxim has not referred us to any statute that would exempt the sales of the TENS and NMES units regardless of use.

{¶ 15} Here the only asserted exemption for the sale of TENS and NMES units is contained in R.C. 5739.02(B)(19), which provides an exemption for "devices to aid human perambulation" and "items of tangible personal property used to supplement impaired functions of the human body such as respiration, hearing, or elimination." While the BTA did find that the TENS and NMES units "*can* aid human perambulation," it also found that the TENS and NMES units can be used to strengthen "dysfunctional parts of the body, akin to physical fitness equipment." (Emphasis by BTA.) R.C. 5739.02(B)(19) specifically provides that

4

no exemption is allowed for "physical fitness equipment." The evidence showed that the units have a multitude of uses, including treatment of elbow and shoulder ailments, itching, and chronic pain throughout the body. These uses do not aid human perambulation.

{¶ 16} The mere fact that a device "can" be used for an exempt purpose, such as aiding human perambulation or to supplement impaired functions of the human body such as respiration, hearing, or elimination, does not mean that its sale is always exempted or excepted from taxation regardless of its use. Because the sales of TENS and NMES units are not exempt from tax regardless of their use, Maxxim had to provide either certificates of exemption or acceptable letters of usage to account for its failure to collect the tax. Maxxim failed to provide such documents for the sales in dispute and, therefore, failed to meet its burden of proof.

{¶ 17} Maxxim contends that no tax can be charged to the patient/consumer receiving the TENS and NMES units that were paid for by the Bureau of Workers' Compensation ("BWC"). We disagree.

{¶ 18} Maxxim bases its contention on former R.C. 4121.44(P). Maxxim argues that R.C. 4121.44(P) prevents the tax from being collected from the claimant, and therefore Maxxim is relieved from any obligation to collect the tax.

{¶ 19} The language contained in R.C. 4121.44 upon which Maxxim relies provided:

"The administrator of workers' compensation shall adopt rules to ensure that the following requirements are met with respect to any payments made to health care providers for a claim pursuant to Chapter 4123. of the Revised Code:

" * * *

"(P) Provide that where a fee bill for services or supplies rendered or provided has been submitted by a health care provider to the bureau for assignment and the fee bill has been approved for payment by the bureau, the health care provider may not assess the claimant or the employer for the difference between

the amount allowed by the bureau and the health care provider's charge[.]" (143 Ohio Laws, Part II, 3296.)

{¶ 20} When the purchase of a TENS or NMES unit is approved by the BWC for a claimant, the bill for the unit is paid by the BWC. However, the amount paid by the BWC does not include any sales tax. Usually the amount paid to Maxxim by the BWC is less than the amount billed by Maxxim, necessitating that Maxxim write off the unpaid balance. The BTA determined that the tax base for calculating Maxxim's tax liability should reflect the actual amount collected from BWC, not the billed amount. That portion of the BTA's decision was not appealed.

{¶ 21} The sale of the TENS or NMES unit is made to an individual. No sale is made to BWC, although the BWC makes the payment for the sale. Maxxim contends that the language of R.C. 4121.44(P) prevents it from collecting the sales tax from the patient who receives the unit.

{¶ 22} There is no dispute between the parties that the person who receives the TENS or NMES unit is the consumer for tax purposes, not the BWC. R.C. 5739.01(D)(1) provides that the "consumer" is "the person * * * to whom the transfer effected or license given by a sale is or is to be made or given." R.C. 5739.03 provides that the tax "shall be paid by the consumer to the vendor, and each vendor shall collect from the consumer, as trustee for the state of Ohio." R.C. 5739.13(A), formerly R.C. 5739.13, provides that "if any vendor fails to collect the tax or any consumer fails to pay the tax," the Tax Commissioner "may make an assessment against either the vendor or consumer, as the facts may require." Maxxim did not charge or collect any sales tax on the sales in question.

{¶ 23} The tax chargeable by Maxxim for the TENS and NMES units is not part of the fee for supplies provided by Maxxim. Any tax charged and collected by Maxxim as vendor from the consumer is "not part of the price, but is a tax collection for the benefit of the state and of counties levying an additional tax." R.C. 5739.01(H)(1). R.C. 5739.03(B) also provides that at the time of delivery the tax

6

should be charged to the account of the consumer and "shall be collected by the vendor from the consumer in addition to the price."  Finally, R.C. 5739.13(A) provides that "[a]n assessment against a vendor when the tax * * * has not been collected or paid, shall not discharge the purchaser's or consumer's liability to reimburse the vendor for the tax applicable to such transaction."

{¶ 24} For all the foregoing reasons, the decision of the BTA is reasonable and lawful and is therefore affirmed.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and COOK, JJ., concur.

PFEIFER and LUNDBERG STRATTON, JJ., dissent.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶ 25} I respectfully dissent.  I consider the sales of the TENS and NMES units exempt from taxation because they are either "devices to aid human perambulation" or "items of tangible personal property used to supplement impaired functions of the human body."  R.C. 5739.02(B)(19).

{¶ 26} I do not agree with the BTA's conclusion in *Kempf II* (*Kempf Surgical Appliances, Inc. v. Tracy* [July 18, 1997], BTA No. 93-D-486, unreported, at 6) that these units "may be subject to a reasonable and primary use by the consumer for a form of exercise of muscles and joints."  Nor do I agree with the BTA in *Maxxim* that the devices are "akin to physical fitness equipment" used to strengthen various parts of the human body, including "the strengthening of dysfunctional parts."  *Maxxim Med., Inc. v. Tracy* (Sept. 25, 1998), BTA No. 94-X-224, unreported, at 9.  The evidence shows that a TENS unit is a device attached to the skin.  It emanates electrical impulses in an effort to reduce or control pain.  The NMES unit also attaches to the skin and sends electrical impulses to large muscles to cause them to involuntarily contract or flex.  There was testimony that the NMES unit may be used to prevent atrophy in muscles.  The BTA had no

evidence before it that either the TENS or NMES unit was intended for use in developing muscles, physical training, or that their use required any physical exertion. The fact that the muscle may involuntarily move when the unit is on does not indicate that the user is exercising or strengthening a joint or muscle. Certainly the use of the equipment to prevent atrophy of muscles signifies that the user is not strengthening a muscle but rather preventing further deterioration of the muscle. The fact that the TENS and NMES units may be used in a stationary position belies that conclusion that they are akin to physical fitness equipment.

{¶ 27} It is apparent that the General Assembly intended to exclude from the exemption equipment such as exercise bikes, weights, treadmills, and other equipment used for strengthening, conditioning, and developing the human body. A TENS or NMES unit does not convey an image of physical fitness or exercise. I find it impossible to equate these units with physical fitness equipment that is not subject to the exemption in R.C. 5739.02(B)(19).

{¶ 28} In the BTA's original decision in *Maxxim*, the BTA considered whether these units should be exempt from taxation as a device similar to a brace that supports nonfunctioning parts of the human body. The BTA distinguished the TENS and NMES units from a brace or other device that *physically* supports a part of the body. The BTA specifically stated that a TENS or NMES unit "*acts on* parts of the body: it is *not* designed to strengthen and support it." (Emphasis added in part.) *Maxxim Med., Inc. v. Tracy* (Nov. 3, 1995), BTA No. 94-X-224, unreported, at 7. Although the issue involved an actual physical support of the body, the BTA clearly found that the TENS and NMES units were not intended to strengthen and support the body. Yet the BTA reached the opposite conclusion upon remand and expressly found that the equipment was used to strengthen parts of the body. I cannot affirm the BTA's most recent position when it is contrary to an earlier finding.

**{¶ 29}** I would consider that, in addition to a device to aid human perambulation, the TENS and NMES units may be "items of tangible personal property used to supplement impaired functions of the human body." R.C. 5739.02(B)(19). Mobility is a function of the human body. When mobility is impaired, a physician may prescribe a TENS or NMES unit in an effort to decrease pain and ultimately improve the patient's flexibility and mobility. Thus, the TENS or NMES unit may be used to supplement the impaired function of mobility. I do not see the examples of respiration, hearing, and elimination as being inclusive, but merely illustrative. The statute does not confine the application of the exemption to those bodily functions enumerated.

**{¶ 30}** Because I do not agree that the TENS and NMES units are akin to physical fitness equipment, it is my position that the decision of the BTA was unreasonable and unlawful. The sales of the TENS and NMES units should be exempt from taxation. I respectfully dissent.

PFEIFER, J., concurs in the foregoing dissenting opinion.

—————————————