[This decision has been published in *Ohio Official Reports* at 92 Ohio St.3d 46.]

TETLAK, APPELLEE, *v.* VILLAGE OF BRATENAHL ET AL., APPELLANTS.

[Cite as *Tetlak v. Bratenahl*, 2001-Ohio-129.]

*Municipal corporations—Taxation—Income tax—Distributive share of the earnings of an S corporation does not constitute intangible income except when the income received by the S corporation itself is intangible—Income is not exempt from municipal income taxation pursuant to R.C. 718.01(F)(3), when.*

(No. 00-380—Submitted January 9, 2001—Decided June 13, 2001.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 74807.

————————————

MOYER, C.J.

{¶ 1} This matter concerns the taxable status of certain income received by appellee, Joseph Tetlak, from Willow Hill Industries, Inc. in the tax years 1990, 1991, and 1992. Tetlak resides in the village of Bratenahl ("village"), the appellant herein, and was employed by Willow Hill, a Subchapter S corporation in which he owns stock, located in Willoughby, Ohio. During those years, Tetlak received both a salary from Willow Hill and a share of its earnings. Tetlak paid municipal residence tax on his salary but not on his share of the earnings received from Willow Hill.

{¶ 2} In 1994, Tetlak received three "Reports of Audit Adjustments," assessing $8,468 in additional residence tax relating to the share of earnings received by Tetlak from Willow Hill. Tetlak filed a protest challenging the audit adjustments, which was denied by the Central Collection Agency ("CCA"), acting as tax administrator. CCA's letter upholding the tax assessments asserted that this income from a Subchapter S corporation "is not considered dividends from intangible property" and thus exempt from municipal tax but is instead income from

an "unincorporated business entity" and therefore taxable by municipalities. Upon Tetlak's appeal to the Bratenahl Board of Review, the denial was affirmed.

{¶ 3} Tetlak then filed an administrative appeal in the common pleas court pursuant to R.C. 2506.01. Following *Misrach v. Montgomery* (1993), 90 Ohio App.3d 187, 188-190, 628 N.E.2d 126, 127-128, the trial court held that the municipality may tax Subchapter S distributions if it determines that the distributions are the result of services rendered to or for the corporation. This determination must be supported by "the preponderance of substantial, reliable, and probative evidence on the whole record." R.C. 2506.04. Finding that the CCA did not make such determination, the court reversed the decision of the board of review.

{¶ 4} The village appealed. The Court of Appeals for Cuyahoga County affirmed the decision, holding that the correct analysis is whether the distribution is income arising from ownership of stocks, or income arising from services rendered and that the village presented no evidence to support its allegation that municipalities have authority to tax the nonwage income passed through to Tetlak from his S corporation.

{¶ 5} The cause is now before this court pursuant to the allowance of the discretionary appeal.

{¶ 6} The question presented is whether a municipal taxing authority may tax the distributive shares of an S corporation. Our analysis of the law causes us to conclude that the distributive share of the earnings of an S corporation does not constitute intangible income except when the income received by the S corporation itself is intangible, and, as such, is therefore not exempt from municipal income taxation pursuant to R.C. 718.01(F)(3). Accordingly, we reverse the judgment of the court of appeals.

I

**{¶ 7}** R.C. 718.01(F)(3) provides: "No municipal corporation shall tax * * * [e]xcept as otherwise provided in division (G) of this section, intangible income." "Intangible income" is defined as "income of any of the following types: income yield, interest, dividends, or other income arising from the ownership, sale, exchange, or other disposition of intangible property including, but not limited to, investments, deposits, money, or credits as those terms are defined in Chapter 5701. of the Revised Code." R.C. 718.01(A)(4).

**{¶ 8}** Congress enacted Subchapter S legislation to eliminate tax disadvantages that may dissuade small businesses from adopting the corporate form and to reduce the tax burden on such businesses. The statute accomplishes these goals by treating corporate income, losses, deductions, and credits as if incurred by individual shareholders in a manner akin to the tax treatment of partnerships. *Bufferd v. Commr. of Internal Revenue* (1993), 506 U.S. 523, 524-525, 113 S.Ct. 927, 928-929, 122 L.Ed.2d 306, 311. "The corporation's profits pass through directly to its shareholders on a pro rata basis and are reported on the shareholders' individual tax returns." *Gitlitz v. Commr. of Internal Revenue* (2001), 531 U.S. 206, ___, 121 S.Ct. 701, 704, 148 L.Ed.2d 613, 619.

**{¶ 9}** The village argues that the conclusion reached by the court of appeals that "how one characterizes distributions from an S corporation is a question of fact to be determined on a case-by-case basis" ignores the pass-through nature of an S corporation. In contrast, Tetlak argues that the treatment of an S corporation for federal or state tax purposes, and thus the nature of an S corporation as a flow-through entity, is irrelevant to a determination of whether a municipality may tax a distributive share of an S corporation. Tetlak also argues that there is no distinction between income derived from S and C corporations for tax purposes.

**{¶ 10}** We are not persuaded by Tetlak's argument that the treatment of an S corporation is not distinct from that of a C corporation for tax purposes. However,

we are also not persuaded by the village's argument that a case-by-case determination of whether a distributive share from an S corporation is properly taxable by a municipality ignores the pass-through nature of an S corporation. As noted above, the court determined that the municipality could properly tax distributions " '*if* the city determines that the distributions from the Subchapter S corporation constitute payments resulting from services rendered to or for the corporation,' " quoting *Alspaugh v. Rocky River* (May 28, 1997), Cuyahoga C.P. No. CV-320089, unreported. The *Misrach* court also advocated this case-by-case analysis, noting that the municipality could determine in each case "whether a distribution of a Subchapter S corporation which is nominally classified as a dividend is actually wages and thus subject to taxation." *Misrach,* 90 Ohio App.3d at 189, 628 N.E.2d at 127. While we agree that the court must determine the nature of income on a case-by-case basis, we disagree with the courts' analysis.

{¶ 11} We have characterized the S corporation as a flow-through entity "whereby the income and losses of the business are nontaxable to the corporation, but instead flow through to the individual shareholders." *Dupee v. Tracy* (1999), 85 Ohio St.3d 350, 351, 708 N.E.2d 698, 700. In *Dupee*, we held that distributive share income that nonresident shareholders of an Ohio S corporation receive and report as part of federal adjusted gross income is subject to Ohio personal income taxation. *Id.* at 351, 708 N.E.2d at 699. " '[A] Subchapter S corporation differs significantly from a normal corporation in that the profits generated through the S corporation are taxed as personal income to the shareholders. The taxable income of the S corporation is computed essentially as if the corporation were an individual. Section 1363, Title 26, U.S.Code.' " (Emphasis deleted.) *Id*. at 351, 708 N.E.2d at 700, quoting *Ardire v. Tracy* (1997), 77 Ohio St.3d 409, 674 N.E.2d 1155, fn. 1.

{¶ 12} This court has held that Michigan shareholders of an Ohio S corporation are required to pay income tax on their distributive share of the S corporation's income. *Agley v. Tracy* (1999), 87 Ohio St.3d 265, 268, 719 N.E.2d

4

951, 954. In so holding, we noted, "Section 1366(b), Title 26, U.S.Code indicates that the character of the item distributed to a shareholder is to be determined as if the item were realized from the source from which the corporation realized the item. Thus, business income generated by an S corporation retains its status as business income as it passes through to the shareholders." *Id*. at 268, 719 N.E.2d at 954.

**{¶ 13}** In the instant case, both parties agree that the distributive shares arise from the net profits of the S corporation. Tetlak is the sole shareholder of Willow Hill Industries, Inc. and characterized the net profits as ordinary income on his federal Schedule K-1 after deducting an amount for his salary and other items. However, Tetlak argues that this income for purposes of municipal taxation is "intangible income" because it is related to his stock in the S corporation and therefore fits the statutory definition of such income as "dividends, or other income arising from the ownership * * * of intangible property including * * * investments." R.C. 718.01(A)(4).

**{¶ 14}** The village argues that because the distributive shares represent the net profits of the S corporation, due to the pass-through nature of an S corporation, these shares constitute ordinary income to Tetlak. However, the village asserts that earnings that an S corporation receives from interest income, royalties, or dividends do constitute intangible income and would be excluded from municipal taxation.

**{¶ 15}** *Agley*, *Ardire,* and *Dupee* support the proposition that if the income earned by an S corporation is not "intangible income," the distributive share received by the shareholder is not intangible income and is subject to municipal taxation. In other words, since "income generated by an S corporation retains its status * * * as it passes through to the shareholders," the determinative issue is whether the income generated by the S corporation was intangible income or ordinary income for the S corporation. *Agley*, 87 Ohio St.3d at 268, 719 N.E.2d at 954.

II

**{¶ 16}** Having determined that the distributive share of an S corporation may not constitute intangible income when the income received by the S corporation is not intangible, we answer the question of whether the village has the authority to tax the distributive share. "[A] tax enacted by municipality pursuant to its taxing power is valid in the absence of an express statutory prohibition of the exercise of such power by the General Assembly." *Cincinnati Bell Tel. Co. v. Cincinnati* (1998), 81 Ohio St.3d 599, 601, 693 N.E.2d 212, 214. The General Assembly has declared that a municipality may tax income not defined as intangible income. Specifically, R.C. 718.01(D)(1) provides: "[N]o municipal corporation shall exempt from a tax on income, compensation for personal services of individuals over eighteen years of age or the net profit from a business or profession." R.C. 718.01(F)(3) prohibits municipal corporations from taxing intangible income, thus placing a clear limitation on the municipalities' right to tax such income.

**{¶ 17}** Bratenahl Codified Ordinance 171.0318 defines "taxable income" as "wages, salaries and other compensation paid by an employer or employers before any deduction and/or the net profits from the operation of a business, profession or other enterprise or activity adjusted in accordance with the provisions of this chapter." Bratenahl Codified Ordinance 171.0501(d)(2) imposes a residence tax "[o]n the portion of the distributive share of the net profits earned on or after January 1, 1981, of a resident partner or owner of a nonresident unincorporated business entity not attributable to the village and not levied against such unincorporated business entity."

**{¶ 18}** Bratenahl Codified Ordinance 171.2303 grants the Tax Administrator the power, "subject to the approval of the Board of Review, to adopt and promulgate and to enforce rules and regulations" related to the collection of taxes. Pursuant to this authority, the village has adopted rules and regulations that give the Tax Administrator "the authority to correct or adjust any return submitted,

when a correction or adjustment is necessary to accomplish the intent of the ordinance." Central Collection Agency Administrator's Rules and Regulations, Article 23:03(A).

{¶ 19} Bratenahl Codified Ordinance 171.0501(d)(2) was enacted in 1980, well before the Subchapter S Revision Act of 1982, which transformed S corporations into pass-through entities. In 1980, an unincorporated entity included partnerships and sole proprietorships, the only pass-through entities then existing. Glenn E. Coven, Subchapter S Distributions and Pseudo Distributions: Proposals for Reusing the Detective Blend of Entity and Conduit Concepts (1987), 42 Tax L.Rev. 381, at 381. The village argues that "[b]oth the Village and Central Collection Agency have historically and consistently determined that an owner's distributive shares of the earnings of an S corporation fall within the scope of this section as well, holding that 'unincorporated business entity,' as used in the ordinance, includes any entity which is not taxed as a corporation under Subchapter C of the Internal Revenue Code."

{¶ 20} The village argues that this interpretation is consistent with the pass-through nature and tax treatment of a Subchapter S corporation and appropriately places S corporations on a footing similar to partnerships for taxation purposes. Specifically, it argues that "[b]ecause an S corporation shareholder can avail himself, personally, of any deductions, tax credits and losses of the S corporation, it is only logical and reasonable that the shareholder be responsible for the payment of tax on income or net profits of the S corporation which are passed through as part of his distributive share." We agree with this reasoning and hold that an S corporation operates as an unincorporated business entity under Bratenahl Codified Ordinance 171.0501(d)(2).

### III

{¶ 21} The taxpayer, not the village, has the burden of proof on the nature of the income at issue. It is well settled that " 'when an assessment is contested,

the taxpayer has the burden " * * * to show in what manner and to what extent *
* *" the commissioner's investigation and audit, and the findings and assessments
based thereon, were faulty and incorrect.' " *Maxxim Med., Inc. v. Tracy* (1999), 87
Ohio St.3d 337, 339, 720 N.E.2d 911, 913, quoting *Federated Dept. Stores, Inc. v.
Lindley* (1983), 5 Ohio St.3d 213, 215, 5 OBR 455, 457, 450 N.E.2d 687, 688.
Furthermore, the "Tax Commissioner's findings are presumptively valid, absent a
demonstration that those findings are clearly unreasonable or unlawful." *Id.*, 87
Ohio St.3d at 339-340, 720 N.E.2d at 913-914.

{¶ 22} This reasoning is applicable at the municipal level. The village
assessed $8,468 in additional income tax relating to the share of earnings received
by Tetlak from Willow Hill. Nothing in the record before us shows whether the net
income generated by the S corporation was intangible income or ordinary income
to the S corporation. Accordingly, as Tetlak has not shown what portion, if any, of
his distributive shares arising from net profits should not be subject to taxation, the
distributive shares at issue are subject to taxation by the village.

IV

{¶ 23} In conclusion, we hold that the village has the authority to tax the
distributive share of an S corporation under its current ordinance except when the
distributive share flows from intangible income received by the S corporation. In
the instant case, Tetlak failed to meet his burden of proof that the income arising
from the distributive share at issue was intangible income to the S corporation.
Therefore the income is taxable by the village.

{¶ 24} For the foregoing reasons, we reverse the judgment of the court of
appeals.

*Judgment reversed.*

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur.

PFEIFER, COOK and LUNDBERG STRATTON, JJ., dissent.

————————————

**COOK, J., dissenting.**

{¶ 25} For the following reasons, I respectfully dissent from the majority's decision reversing the judgment of the court of appeals.

{¶ 26} As the majority notes, state law prohibits municipalities from taxing "intangible income." R.C. 718.01(F)(3).[1] State law defines nontaxable "intangible income" to include "income arising from the ownership * * * of * * * *investments*." (Emphasis added.) R.C. 718.01(A)(4). For a definition of "investments," the General Assembly explicitly refers courts to R.C. Chapter 5701. *Id.* What today's majority *omits* from its analysis is that Chapter 5701's definition of "investments" includes *"[s]hares of stock in corporations."* (Emphasis added.) R.C. 5701.06(A).

{¶ 27} The majority's omission of this key statutory reference leads the majority astray in the remainder of its analysis. As part of this analysis, the majority adopts the theory that an S *corporation* is somehow "an *unincorporated* business entity." (Emphasis added.) As Tetlak stated in an early notice of appeal, however, such a theory—in addition to being counterintuitive—conflicts with the legal reality that "a subchapter S corporation is just that, a corporation."[2]

{¶ 28} A straightforward application of the plain language of *all* of the relevant provisions of the Revised Code—without resort to unnecessary statutory interpretation—would avoid such analytical conflicts and result in the following inescapable conclusions: (1) state law prohibits Bratenahl from taxing "intangible income"; (2) state law defines "intangible income" to include income arising from the *ownership* of "investments"; and (3) state law defines "investments" to include

---

1. The general prohibition on municipal taxation of intangible income contained in R.C. 718.01(F)(3) is subject to an exception in division (G) not applicable here. *Id.*

2. In an admirable yet ultimately unsuccessful effort to emphasize this point at the administrative level, Tetlak went so far as to attach the Ohio Secretary of State's certificate of good standing to his notice of appeal before the Board of Review of the Village of Bratenahl. That certificate, signed by then-Secretary of State Taft, plainly states that Willow Hill Industries, Inc. is "an Ohio *Corporation*." (Emphasis added.)

shares of stock "in corporations," without regard to those entities' status for purposes of federal or state taxation. Simply put, state law prohibits Bratenahl from taxing the income that Tetlak received arising from his ownership of stock "in corporations." Indeed, this court has already recognized that the General Assembly has placed "income from such sources as stocks" within a "fortress of protection from municipal taxation." *Fisher v. Neusser* (1996), 74 Ohio St.3d 506, 512, 660 N.E.2d 435, 440.

{¶ 29} As Tetlak has argued at every stage of these proceedings, Bratenahl violated the foregoing provisions of state law by assessing additional residence taxes based on the income arising from his ownership of Willow Hill corporate stock. Notably, though Tetlak raised these provisions of state law below, neither the Administrator nor the Board of Review of the Village of Bratenahl even mentioned them in their decisions affirming the assessments.

{¶ 30} For the foregoing reasons, like the court of appeals, I would affirm the trial court's order cancelling the assessments. Tetlak satisfied his burden at the administrative level "to show in what manner and to what extent" the assessments were faulty and incorrect. *Maxxim Med., Inc. v. Tracy* (1999), 87 Ohio St.3d 337, 339, 720 N.E.2d 911, 913, quoting *Federated Dept. Stores, Inc. v. Lindley* (1983), 5 Ohio St.3d 213, 215, 5 OBR 455, 457, 450 N.E.2d 687, 688.

PFEIFER and LUNDBERG STRATTON, JJ., concur in the foregoing dissenting opinion.

———————————

*Baker & Hostetler, L.L.P., Christopher J. Swift* and *Michael K. Farrell*, for appellee.

*Stephen M. O'Bryan; Taft, Stettinius & Hollister, L.L.P.*, and *Elizabeth A. Popovich*, for appellants.

*Cornell P. Carter, Kim D. Amponsah* and *William E. Gareau, Jr.*, urging reversal for *amicus curiae* city of Cleveland, Central Collection Agency.

*John E. Gotherman, Barry M. Byron* and *Stephen L. Byron*, urging reversal for *amicus curiae* Ohio Municipal League.

————————————