**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Krehnbrink v. Testa,* **Slip Opinion No. 2016-Ohio-3391.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-3391

KREHNBRINK ET AL., APPELLANTS, *v.* TESTA, TAX COMMR., APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Krehnbrink v. Testa,* Slip Opinion No. 2016-Ohio-3391.]**

*Income taxation—Tax commissioner's notice to appellants one month before*
  *Board of Tax Appeals hearing of presumption of their Ohio residency was*
  *sufficient to avoid waiver of residency as basis for assessments—*
  *Appellants proved neither that they were not Ohio residents nor that they*
  *were entitled to relief as nonresidents—Board's decision affirmed.*

(No. 2014-0249—Submitted January 26, 2016—Decided June 15, 2016.)

APPEAL from the Board of Tax Appeals, No. 2012-2368.

————————————

**Per Curiam.**

{¶ 1} This is an appeal from a decision of the Board of Tax Appeals ("BTA"), which affirmed the tax commissioner's assessment of Ohio individual income tax against appellants, Robert G. and Leslie R. Krehnbrink, for tax years 2002 through 2007.  The assessments resulted from information supplied to the

tax commissioner by the Internal Revenue Service, in particular the Ohio address used by the Krehnbrinks as their residential address on their federal tax returns.

{¶ 2} For the years at issue, the Krehnbrinks originally filed no Ohio returns at all. The Krehnbrinks have contended that income was earned outside Ohio, but if they are in fact residents and domiciliaries of Ohio, they would be generally taxed on all their income, subject to a credit for income taxes paid to other states on income earned in those other states.

{¶ 3} Beginning in the proceedings before the BTA, the tax commissioner's counsel clarified that the assessments were predicated on the unrebutted presumption that the Krehnbrinks are in fact Ohio residents and domiciliaries, even though the tax commissioner's notices and final determination did not say so. It appears that the Krehnbrinks take the position that they should prevail if they can show that income was earned outside Ohio. But as residents of Ohio, they would be taxed on out-of-state income as a general matter.

{¶ 4} On appeal here, the Krehnbrinks renew their contention that income was earned outside Ohio, and they challenge, for the first time, the admission of five exhibits introduced by counsel for the tax commissioner during the November 13, 2013 hearing before the BTA. Despite the tax commissioner's initial failure to give notice of his reliance on the presumption of Ohio residency, we disagree that appellants have demonstrated a legal error or abuse of discretion by the BTA. Accordingly, we affirm the decision of the BTA.

## FACTUAL BACKGROUND

{¶ 5} The procedural starting point of this case consists of a letter from the tax department to both the Krehnbrinks dated January 8, 2010, stating that the department's records "indicate Ohio individual income tax return(s) were not filed in [their] name(s) for [tax] years [2002 through 2006]." The letter went on to state:

> The Internal Revenue Service ("IRS") has provided to us taxpayer information that we use to verify our records. Specifically, the IRS has provided us information that shows you have received 1099 miscellaneous income from various Ohio payer(s) * * *. It is urgent you respond to this letter by reading the situations described below and taking the appropriate action.

The letter then described two options for responding: filing the missing returns or offering reasons why no returns were required to be filed.

{¶ 6} Notably absent from this initial communication is any statement that the Krehnbrinks were presumed to be domiciled in Ohio, which would form the basis for presuming that all their income for the years at issue should have been reported and taxed. That presumption would naturally have arisen from the use of a Cincinnati, Ohio, address as the residential address listed on their federal tax returns.

{¶ 7} Next, the tax department prepared and issued assessments against the Krehnbrinks for unpaid Ohio individual income taxes.[1] The record shows the computation of tax for five of the six tax years at issue (2002 through 2006) in the form of "Audit Chang[e]" sheets, also referred to as "correction notices." The state then computed Ohio income tax based on the federal adjusted-gross-income figure reported on the federal returns for the years at issue. The total tax, interest, and penalty assessed for tax years 2002 through 2006 was $25,034.

{¶ 8} The correction notices were sent to the Krehnbrinks on or about March 18, 2010, with the demand that, by April 8, the Krehnbrinks "provide proof that the taxes were previously paid, provide wage statements (W-2's,

---

[1] The assessments were issued against both the Krehnbrinks. Although the focus has been on Leslie Krehnbrink's income, only Robert Krehnbrink has appeared in these proceedings. He has appeared pro se based on his joint and several liability with respect to the assessments. *See* R.C. 5747.08(E).

1099's, etc.) that would change the proposed correction notices, or * * * remit the balance due."

{¶ 9} An apparent lack of response by the Krehnbrinks led to the issuance of two assessments. One was issued on April 26, 2010, for tax year 2007, imposing liability of $1,778.91 in tax, interest, and penalty. The second assessment covered tax years 2002 through 2006, based on the correction notices, and was issued on May 5, 2010. The total owed on the second assessment was $25,123. The certified mailing was apparently unsuccessful, and follow-up service by regular mail became necessary.

{¶ 10} By letter dated August 31, 2010, the Krehnbrinks petitioned for reassessment, stating four grounds for relief, including the claim that "[a]ssessed incomes were earned outside of the State of Ohio and are not subject to State of Ohio income tax," with no mention of Ohio residency. Next, an official of the tax department's Office of Chief Counsel contacted the Krehnbrinks by letter dated February 14, 2012, asking for evidence or authority in support of their position, to be submitted by March 30, 2012.

{¶ 11} The tax commissioner issued his final determination in the matter on May 22, 2012. The determination states that the Krehnbrinks were assessed "for failing to file their individual income tax returns for [tax years 2002 through 2007]" and notes that the Krehnbrinks "contend that their income was earned outside of the State of Ohio and should not be subject to Ohio income tax":

> However, [the Krehnbrinks] did not respond to multiple Department requests for information to verify their contention. The [Krehnbrinks] have failed to present evidence to refute the accuracy of the tax, interest and penalty amounts assessed in these matters. Therefore, [the Krehnbrinks'] objection is not well taken.
>
> Accordingly, the assessments are affirmed.

4

{¶ 12} Conspicuous in its absence once more is any mention of a presumption of Ohio domicile and residence; indeed, the final determination appears to acquiesce in the Krehnbrinks' suggestion that proof of a non-Ohio source of income would negate the assessments.

{¶ 13} The Krehnbrinks appealed to the BTA, renewing in their notice of appeal their primary contention that their income was earned outside Ohio. The BTA scheduled a hearing on May 29, 2013, at which the Krehnbrinks did not appear. At that hearing, the then-counsel for the tax commissioner merely stated, "[W]e would like to dismiss for the failure to prosecute, or in the alternative, [the Krehnbrinks] have not provided sufficient documentation to establish that any income that they say shouldn't be pledged to Ohio was, in fact, earned outside of Ohio." Again here, the tax commissioner made no reference to predicating the assessment on the Krehnbrinks' residency but instead focused exclusively on whether income was or was not earned in Ohio.

{¶ 14} The BTA issued an order on June 6, 2013, dismissing the appeal for failure to prosecute. The Krehnbrinks moved for reconsideration on the premise that they had not received notice of the hearing. The BTA granted reconsideration and scheduled a new hearing for November 13, 2013.

{¶ 15} On October 3, 2013, counsel for the tax commissioner sent Robert Krehnbrink an e-mail making clear that the Krehnbrinks' Ohio residency would be presumed and would serve as a basis for the assessments unless and until the Krehnbrinks provided documentation rebutting the presumption.

{¶ 16} At the November 13 hearing, Leslie Krehnbrink was not in attendance but Robert Krehnbrink was, and he testified concerning her employment. Robert testified that the documentation he had submitted to the BTA showed that Leslie worked outside Ohio during the tax years at issue. He stated at the hearing that she was a corporate trainer hired by companies to

provide training sessions for middle and upper management. Robert further stated that other documentation of the out-of-state locations where Leslie had resided was no longer in existence.

{¶ 17} Robert Krehnbrink admitted that the documentation he had submitted showed that some of Leslie Krehnbrink's work was performed in Ohio. Further, Robert stated his view that this Ohio-sourced income was subject to Ohio income tax. But the Krehnbrinks did not quantify how much income was earned in Ohio and how much was earned outside the state. The documentation that Robert submitted to the BTA consists of printouts of the Krehnbrinks' form 1099 information for tax years 2002 through 2006 and a portion of the Krehnbrinks' W-2 form for tax year 2007. The documents often show the location of a payor, but they do not on their face show the location at which work was performed.

{¶ 18} Robert Krehnbrink offered no evidence to controvert the tax commissioner's position on Ohio residency; indeed, he admitted that Leslie Krehnbrink "comes back to Ohio" to reside when she has completed a particular assignment. For his part, the tax commissioner introduced without objection what counsel summarized as "a printout from the public records information available on Westlaw for Mr. Krehnbrink's wife," which "shows real property records for various years, vehicle registrations for years, and addresses in Ohio, voter registration information, so a lot of the common law information that's used for determining whether an individual is a resident or a nonresident." That information—reflecting an Ohio home with a mortgage, Ohio auto registrations, and an Ohio voting registration—was offered to establish an affirmative case that the Krehnbrinks were domiciled in Ohio.

{¶ 19} The BTA issued its decision on January 15, 2014. The board recited the presumption of validity attaching to the tax commissioner's determinations and held in effect that the Krehnbrinks had not presented sufficient evidence to rebut that presumption:

Upon review of the record before us, we find that appellants have failed to provide sufficient evidence to demonstrate an error in the commissioner's final determination. Indeed, the only evidence presented, aside from general testimony devoid of specific details about Ms. Krehnbrink's employment outside the state, are 1099's indicating that Ms. Krehnbrink was paid by many entities, both in and out-of-state, during the period in question. We find such evidence insufficient to demonstrate a right to the relief requested.

BTA No. 2012-2368, 2014 WL 351136, *2 (Jan. 15, 2014). Notably, the BTA decision makes no mention of the Ohio-residency issue.

{¶ 20} The Krehnbrinks have appealed.

## ANALYSIS

### OHIO TAXES RESIDENTS ON *ALL* INCOME, NONRESIDENTS ON *OHIO* INCOME

{¶ 21} R.C. 5747.02 imposes Ohio income tax on "every individual * * * residing in or earning or receiving income in this state." R.C. 5747.02(A). R.C. 5747.01(N) defines "taxpayer" as "any person subject to the tax imposed by section 5747.02 of the Revised Code," and R.C. 5747.08 requires the filing of a return by "every taxpayer for any taxable year for which the taxpayer is liable for the tax imposed by [R.C. 5747.02], unless the total credits allowed * * * for the year are equal to or exceed the tax imposed by section 5747.02 of the Revised Code." Finally, "resident" applied to an individual means "[a]n individual who is domiciled in this state * * *," R.C. 5747.01(I)(1), and "nonresident" means "an individual * * * that is not a resident," R.C. 5747.01(J).

{¶ 22} As for "domicile," that is " ' "the technically pre-eminent headquarters that every person is compelled to have in order that certain rights

and duties that have been attached to it by the law may be determined." ' " *Cunningham v. Testa*, 144 Ohio St.3d 40, 2015-Ohio-2744, 40 N.E.3d 1096, ¶ 12, quoting *Schill v. Cincinnati Ins. Co.*, 141 Ohio St.3d 382, 2014-Ohio-4527, 24 N.E.3d 1138, ¶ 24, quoting *Williamson v. Osenton*, 232 U.S. 619, 625, 34 S.Ct. 442, 58 L.Ed. 758 (1914).

**{¶ 23}** In sum, all income of Ohio residents is taxable wherever earned or received, subject to a "resident credit" for amounts of state income tax paid to another state where the income was earned or received. *Cunningham* at ¶ 10. As for nonresidents, all their income that is earned or received in this state is taxable. *Id.* The nonresident limits the tax to Ohio income only by claiming the nonresident credit under R.C. 5747.05(A).

### THE KREHNBRINKS FAILED TO PROVE THAT THEY DO NOT HAVE TO PAY THE AMOUNTS ASSESSED

*The presumption of Ohio residency was not originally mentioned in the tax assessments*

**{¶ 24}** Unfortunately for the goal of sound tax administration, the tax department initially failed to state that it was relying on the presumption of Ohio domicile. Neither the notices received by the Krehnbrinks nor the tax commissioner's final determination made any mention of a presumption of Ohio domicile, let alone set forth any finding thereof in light of the information in hand. And although it is true that taxpayers are charged with a knowledge of the law, they are not charged with knowledge of what theory of liability the tax commissioner is relying upon, apart from being informed of that theory by the commissioner himself.

*The Krehnbrinks did not refute the assessment, either as residents or nonresidents*

**{¶ 25}** At the BTA, the tax commissioner's counsel attempted to rescue the assessments by identifying Ohio residency as their basis. She introduced into evidence the e-mail she had sent on October 3, 2013, to Robert Krehnbrink, which

was admitted after he reviewed it and declined to object to its admission. It reads as follows:

> The Tax Commissioner reviewed the information provided and is unable to adjust the assessments based upon the documentation provided. The presumption is that you and Mrs. Krehnbrink are residents of the state of Ohio, until shown otherwise. You had indicated to me that your wife resided in different locations between 2002 and 2007. I would appreciate it if you could please provide me with information and documentation that shows where she lived out of state between 2002 and 2007. Also, please provide me any information regarding income tax paid to other states.
>
> Some of the information provided indicates that your wife received income from businesses in Ohio. The Tax Commissioner has not received any returns from you for the years 2002 to 2007.

{¶ 26} On the one hand, the failure of the tax commissioner to communicate to the taxpayer and the BTA the need to offer proof on a particular point can lead to a waiver by the commissioner of that point. *See The Chapel v. Testa*, 129 Ohio St.3d 21, 2011-Ohio-545, 950 N.E.2d 142, ¶ 25-28. On the other hand, in a proper case, the tax commissioner can take a position at the BTA that proof of particular points is required, and the de novo nature of the BTA proceeding permits those issues to be raised and adjudicated. *See Key Servs. Corp. v. Zaino*, 95 Ohio St.3d 11, 16, 764 N.E.2d 1015 (2002).

{¶ 27} Here, the tax commissioner's reliance on the Krehnbrinks' Ohio residency was not raised until the commissioner's counsel notified the Krehnbrinks by e-mail just over one month before the second BTA hearing.

Then, at that hearing, counsel argued that the assessments were justified by the Krehnbrinks' Ohio residency.

**{¶ 28}** In response, Robert Krehnbrink failed to deny Ohio residency or to assert residency outside Ohio. He also admitted that when Leslie Krehnbrink would travel to perform corporate training services, she would "com[e] back to Ohio" when a job assignment was completed. This testimony invokes the essential feature of domicile: an intent to return to a place even if one is away from it for a long time. *Schill*, 141 Ohio St.3d 382, 2014-Ohio-4527, 24 N.E.3d 1138, at ¶ 24 (" ' "that is properly the domicile of a person where he has his true, fixed, permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning" ' "), quoting *Sturgeon v. Korte*, 34 Ohio St. 525, 535 (1878), quoting Story, *Conflict of Laws*, Section 41.

**{¶ 29}** While this situation reflects bad administrative practice by the state, the fact remains that Robert Krehnbrink could have, at a minimum, challenged the assertion of Ohio residency for himself and Leslie Krehnbrink, but he did not. Additionally, Krehnbrink declined to object to admission of the five exhibits introduced by the tax commissioner's counsel, including the Westlaw printout of public-records information that furnished evidence of the Krehnbrinks' Ohio residency. Krehnbrink thereby acquiesced in viewing residency as an issue to be determined by the BTA and waived the Krehnbrinks' challenge to the admissibility of the five exhibits as an issue reviewable by this court.

**{¶ 30}** In any event, even if residency had not been validly placed at issue, Krehnbrink failed to rebut the assessment even if the Krehnbrinks were deemed not to be Ohio residents. The rule is well settled that a taxpayer challenging the assessment has the burden to " ' "show in what manner and to what extent * * * the commissioner's investigation and audit, and the findings and assessments based thereon, were faulty and incorrect." ' " *Maxxim Med., Inc. v. Tracy*, 87 Ohio St.3d 337, 339, 720 N.E.2d 911 (1999), quoting *Federated Dept. Stores, Inc.*

*v. Lindley*, 5 Ohio St.2d 213, 215, 450 N.E.2d 687 (1983), quoting *Midwest Transfer Co. v. Porterfield*, 13 Ohio St.2d 138, 141, 235 N.E.2d 511 (1968). *See also Tetlak v. Bratenahl*, 92 Ohio St.3d 46, 51, 748 N.E.2d 51 (2001) (taxpayer had the burden of showing manner and extent of error in a municipal income-tax assessment). Quite simply, Robert Krehnbrink admitted that some of Leslie Krehnbrink's work was performed in Ohio and failed to prove the amount that was not.

{¶ 31} As a result, the Krehnbrinks proved neither that Leslie Krehnbrink was not a resident nor that they were entitled to relief as nonresidents. Either way, the Krehnbrinks opened the door to affirmance of the entire assessment.

## CONCLUSION

{¶ 32} For the foregoing reasons, we affirm the decision of the BTA.

Decision affirmed.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, and O'NEILL, JJ., concur.

KENNEDY, J., concurs in judgment only with an opinion.

FRENCH, J., concurs in judgment only.

_____

**KENNEDY, J., concurring in judgment only.**

{¶ 33} I concur only in the majority's judgment affirming the decision of the Board of Tax Appeals ("BTA"). I write separately to express concern about the cavalier attitude of appellee, the tax commissioner, in failing to meet the case-management deadline established in Ohio Adm.Code 5717-1-07(A)(3)(f) and about the BTA's failure to ensure that its procedural rules are enforced.

{¶ 34} Reasonable procedural rules adopted pursuant to statutory authority have the "force and effect" of law. *Lyden Co. v. Tracy*, 76 Ohio St.3d 66, 69, 666 N.E.2d 556 (1996). "Certainly, if the administrative agency itself has established rules to be followed by its own representatives, such rules are the agency's

expression of what is regarded as *necessary to a fair hearing, and the rules should be respected.*" (Emphasis added.) *Lawrence v. Leach*, 120 Ohio App. 411, 413, 202 N.E.2d 703 (10th Dist.1964).

{¶ 35} The General Assembly afforded the BTA the power to "[a]dopt and promulgate" and the duty to enforce "all rules relating to the procedure of the board in hearing appeals it has the authority or duty to hear." R.C. 5703.02(D). In accordance with R.C. 5703.02(D), the BTA promulgated Ohio Adm.Code 5717-1-16(I), which states that "[e]ach party *shall* provide copies of the documentary exhibits it plans to offer into evidence * * * to all parties consistent with the period set forth in the applicable case management schedule." (Emphasis added.) For appeals in which a hearing is scheduled, an appellee "*shall disclose* to all other parties the witnesses and evidence upon which it relies not more than *two hundred ten days after the filing of the appeal*." (Emphasis added.) Ohio Adm.Code 5717-1-07(A)(3)(f). This court construes the word "may" as permissive and the word "shall" as mandatory unless there appears a clear and unequivocal intent that these words receive a construction other than their ordinary usage. *Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St.2d 102, 271 N.E.2d 834 (1971), paragraph one of the syllabus; *see also State v. Palmer*, 112 Ohio St.3d 457, 2007-Ohio-374, 860 N.E.2d 1011, ¶ 19, citing *Dorrian* at paragraph one of the syllabus (applying this principle of statutory interpretation to a rule of criminal procedure).

{¶ 36} The BTA's use of the word "shall" in the above procedural rules reflects its clear and unequivocal intent to require that evidence be disclosed to the opposing party within the specified time period. To conclude that the language of these provisions is permissive would render the disclosure requirement meaningless.

{¶ 37} Appellants, Robert G. and Leslie R. Krehnbrink, filed their appeal in the BTA on July 25, 2012. Therefore, the tax commissioner was required by

Ohio Adm.Code 5717-1-07(A)(3)(f) to disclose his evidence to appellants within the next 210 days, or by February 20, 2013. At the BTA hearing on November 13, 2013, the tax commissioner introduced exhibits B, D, and E, which, on their face, reveal that they were not provided to the Krehnbrinks by February 20, 2013.

{¶ 38} The tax commissioner does not deny failing to disclose exhibits B, D, and E to the Krehnbrinks within the time period established by Ohio Adm.Code 5717-1-07(A)(3)(f). Instead, the tax commissioner asserts that the Krehnbrinks did not raise an objection and "never expressed * * * concern" after reviewing the exhibits at the hearing. Perhaps pro se litigants are not as savvy as an assistant attorney general representing the tax commissioner, but they should not be required to be.

{¶ 39} The procedural rules established in the Ohio Administrative Code, consistent with the grant of authority by the General Assembly, are to ensure that opposing parties are litigating on a level playing field. "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Discovery rules "prevent unfair surprise and the secreting of evidence by ensuring the free flow of information." *Weckel v. Cole & Russell Architects*, 1st Dist. Hamilton No. C-110590, 2013-Ohio-2718, 994 N.E.2d 885, ¶ 24. All litigants, especially pro se litigants like the Krehnbrinks, are entitled to have these rules complied with and enforced.

{¶ 40} While it is clear that the BTA did not rely on exhibits B, D, and E in rendering its decision, in my view, the tax commissioner and the BTA shirked their respective legal obligations as outlined above. "No officer of the law may set that law at defiance with impunity. All the officers of the government, from the highest to the lowest, are creatures of the law and are bound to obey it." *United States v. Lee*, 106 U.S. 196, 220, 1 S.Ct. 240, 27 L.Ed. 171 (1882).

{¶ 41} Accordingly, I concur in judgment only.

_____

Robert G. Krehnbrink, pro se.

Michael DeWine, Attorney General, and Sophia Hussain, Assistant Attorney General, for appellee.

_____